## In re RENAKER.

(District Court, E. D. Kentucky. March 29, 1923.)

Bankruptcy ⊂⇒143(12)—Trustee not entitled to cash surrender value of life policy naming third person as beneficiary in Kentucky.

Trustee in bankruptcy is not entitled, under Bankruptcy Act, § 70a (Comp. St. § 9654), to the cash surrender value of a life policy of a bankrupt in Kentucky, where the beneficiary is a person other than the insured even though insurer retains right to change beneficiary in view of Ky. St. § 655, entitling the beneficiary to the proceeds as against creditors.

In Bankruptcy. In the matter of the estate of Clifton Renaker, bankrupt. On review of order of referee denying trustee's right to cash surrender value of policy of insurance. Order affirmed.

M. C. Swinford, of Cynthiana, Ky., for the bankrupt.

COCHRAN, District Judge. This cause is before me on petition for review filed by the trustee, complaining of an order of the referee denying his right to the cash surrender value of a policy of insurance for $1,000 on the life of the bankrupt, amounting to the sum of $178. The policy was taken out on August 17, 1913, and made payable to his wife. It contained a clause giving him the right to change the beneficiary. In May, 1920, she abandoned him and thereafter obtained a divorce and remarried. On July 23, 1920, with the consent of the insurance company he changed the beneficiary of the policy by making his two infant children the beneficiaries thereof, instead of his wife. In April, 1922, he filed his voluntary petition in bankruptcy, and on April ——, 1922 was adjudged a bankrupt. A petition was filed by the trustee, claiming the cash surrender value of the policy,

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and one on behalf of the two infant children, asserting their right to the policy.

Section 655, Kentucky Statutes, provides:

"When a policy of insurance is effected by any person on his own life or on another life in favor of some person other than himself, having an insurable interest therein, the lawful beneficiary thereof, other than himself or his legal representatives, shall be entitled to its proceeds against the creditors and representatives of the person effecting the same."

There is also a proviso to the effect that the amount of the premiums paid in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy.

The decision of the Supreme Court of the United States in the case of Holden v. Stratton, 198 U. S. 202, 25 Sup. Ct. 656, 49 L. Ed. 1018, 14 Am. Bankr. Rep. 94, has never been overruled, as is argued. The decisions in the later cases of Burlingham v. Crouse, 228 U. S. 459, 33 Sup. Ct. 564, 57 L. Ed. 920, 46 L. R. A. (N. S.) 148, 30 Am. Bankr. Rep. 6, Everett v. Judson, 228 U. S. 474, 33 Sup. Ct. 568, 57 L. Ed. 927, 46 L. R. A. (N. S.) 154, 30 Am. Bankr. Rep. 1, Cohen v. Samuels, 245 U. S. 50, 38 Sup. Ct. 36, 62 L. Ed. 143, 40 Am. Bankr. Rep. 384, Cohn v. Malone, 248 U. S. 450, 39 Sup. Ct. 141, 63 L. Ed. 352, 43 Am. Bankr. Rep. 1, and Frederick v. Fidelity Mut. Life Ins. Co., 256 U. S. 395, 41 Sup. Ct. 503, 65 L. Ed. 1009, 46 Am. Bankr. Rep. 586, are not inconsistent therewith. The decision in Holden v. Stratton, was to the effect that where the state law exempts a policy of life insurance from the insured's debts same does not pass to the trustee under section 70a of the Bankruptcy Act (Comp. St. § 9654), so as to entitle him to its cash surrender value. In the later cases no state law exempting policies of life insurance from the insured's debts was involved, so that there was nothing in the way of that provision of the Bankruptcy Act operating. They all involved a construction of that section where there was no state law exempting such policies.

In the case of Burlingham v. Crouse it was held that a policy of life insurance which had no cash value did not pass under that section. In Everett v. Judson it was held that where the bankrupt died after the filing of the petition, but before the adjudication, the trustee was not entitled thereafter to its proceeds, but only to its cash surrender value. In Cohen v. Samuels it was held that the trustee was entitled thereunder to the cash surrender value of a policy on the bankrupt's life, though payable to specified relatives, if he had the right to change the beneficiaries. The decision in the case of Cohn v. Malone is to the same effect as that in Cohen v. Samuels. In Frederick v. Fidelity Mutual Life Insurance Co. the bankrupt died pending the bankruptcy proceedings. It was held that an insurance company, which, without notice of the pendency of such proceedings, paid the amount due on a policy to the wife, the beneficiary therein, could not be sued for its cash surrender value at the time of the filing of the petition, though the bankrupt had the right to change the beneficiary and the trustee was entitled to such cash surrender value.

Of these five cases only those of Cohen v. Samuels and Cohen v. Malone can possibly be in point here. They are in point, if section

655 of Kentucky Statutes is not in the way. If it is not in the way, it follows from them that the trustee is entitled to the cash surrender value of the policy in question. But neither they nor any one of the other three cases have any bearing on the question whether that section is in the way. And it follows from Holden v. Stratton that, if that section covers the policy here involved, it is in the way. So the sole question here is as to the true construction of that section. So far as the Supreme Court of the United States is concerned, we are without any help from it in construing it. If we need help, we must look elsewhere. The section expressly provides that the beneficiaries of a policy of life insurance effected by another on his life, if they have an insurable interest therein, shall be entitled to its proceeds as against the creditors of the insured, provided, if any of the premiums have been paid in fraud of them, the amount thereof, with interest, shall inure to their benefit from the proceeds of the policy. In the absence of such a statute it is a question as to what are the rights of creditors against the proceeds of a policy of life insurance procured by an insolvent debtor. The law on this subject is thus stated in Moore on Fraudulent Conveyances, vol. 1, § 21:

"In the absence of actual fraud, it is held as a general rule that the premiums paid by an insolvent debtor for insurance upon his life, in favor of his wife and children, or either, cannot be recovered by creditors, whether existing or subsequent, as made in fraud of their rights, or the proceeds of the policy subjected to the payment of his debts, to the amount of the premiums paid by the insolvent debtor during insolvency, where the provision for the family is reasonable and not excessive. On the other hand, it is held in some jurisdictions that payments made by an insolvent debtor on a policy of insurance on his own life, for the benefit of his wife and children, are voluntary gifts to the beneficiary, and are fraudulent and void as to the creditors existing at the time of such payment. In some jurisdictions it is held that, where an insolvent debtor voluntarily pays premiums on a policy of insurance on his life for the benefit of his wife, or children, or another, in fraud of his creditors, the latter may in equity reach and subject the full amount of the insurance in the hands of the insurance company; the policy of insurance which it represents being regarded as the subject of the gift, and not the premiums paid. More generally, however, the rule is maintained, in such cases, that the creditors of the debtor may reach and subject the insurance to the payment of their claim only to the extent of the premiums so paid, with interest; the insurance being upon the interest of the wife, child, or other person in his life, not the creditor's interest in his life, and the amount due representing, and, beyond the amount of premiums paid, being, the interest of the beneficiary."

This affords a field for legislation, and in many states rights of the parties are fixed by statutes. Concerning this legislation, Moore, continuing his quotation, says:

"But the rules stated above do not apply where the transaction is authorized and made lawful by a statute of exemption or by a statute permitting a debtor, as against his creditors, to pay premiums for insurance upon his life for the benefit of his wife and children or other dependent relatives, except where such a statute expressly excepts from its provisions cases in which the premiums are paid with intent to defraud creditors. Such statutes, being in the nature of exemption laws, are liberally construed by the courts in favor of those intended to be benefited thereby."

The matter was first covered by legislation in this state by sections 30 and 31 of the Act of March 12, 1870 (Acts 1869-70, c. 645), enti-

tled, "An act for the incorporation and regulation of life insurance companies." This act was the parent of sections 654 and 655 of the Kentucky Statutes.

The only possible question that can be raised here is as to whether section 655 is limited to policies in which the insured retains no right to change the beneficiaries. No such limitation is to be found in its phraseology. No reason occurs why it should be so limited. How far legislation exempting life insurance policies may go is exemplified by the statute of Washington involved in the case of Holden v. Stratton. It exempted such policies whether payable to a beneficiary or not. Moore concludes the quotation above in these words:

"Such statutes, being in the nature of exemption laws, are liberally construed by the courts in favor of those intended to be benefited thereby."

The liberal attitude of the Court of Appeals of Kentucky towards the statute of this state is shown by its decisions in the cases of Thompson v. Cundiff, 11 Bush, 567, and Hise v. Hartford Life Ins. Co., 90 Ky. 101, 13 S. W. 367, 29 Am. St. Rep. 358. That court has never had before it the question whether the statute covers such a policy as we have here. It has, however, come very near holding that it does. It has been decided that the interest of a beneficiary in a policy of insurance, where the insured has the right to change the beneficiaries, is a vested interest, though it is liable to be defeated by an exercise of the power to change. Hopkins v. Hopkins' Adm'r, 92 Ky. 324, 17 S. W. 864. This goes further than the decision of the Sixth Circuit Court of Appeals in the case of Mutual Benefit Life Ins. Co. v. Swett, 222 Fed. 201, 137 C. C. A. 640, Ann. Cas. 1917B, 298, where it was held that in such a policy the beneficiary has no vested right, but merely expectancy, during the lifetime of the insured. And in the case of Townsend's Assignee v. Townsend, 127 Ky. 230, 105 S. W. 937, 16 L. R. A. (N. S.) 316, it was decided by the Kentucky Court of Appeals, in the case of a policy payable to the children of the insured or, if they died, to his legal representatives, with no reservation to change the beneficiary, but a reservation of the right to surrender the policy at the end of the first 10 years, or at the end of any subsequent 5 years, and to receive in cash its then value, such right continuing only 30 days immediately succeeding such term of years, that section 655, Kentucky Statutes, applied. In the opinion it said this:

"Suppose the case were that the insured merely had reserved the power to change the beneficiary: We have time and again held, since the Hopkins Case, supra, that such a power reserved in the policy was not affected by the statutes quoted above. Could he be required to exercise it against his children, and in favor of his creditors? Or could he have been required to so exercise it as to give it all to one child who was indebted, so that the creditors might get it, and so as to exclude the other child? Is this case different in principle from those supposed? We think not. If a debtor has a homestead exemption, or the two horses exempt from execution, could he be compelled to sell and convert the property into cash (for he has the right and power to do so) so that his creditors could reach it? A married woman may make a will. She may exclude her husband from her estate. But it is subject to his rights of renunciation within one year, in which event he would take under the statute of descent. It has been held by this court that an

indebted husband could not be compelled to exercise his option to renounce the will which gave all the property to his children, and to take his part under the statute."

Judge Evans had the question before him in the case of In re Pfaffinger (D. C.) 164 Fed. 526, 21 Am. Bankr. Rep. 255, as to whether section 655, Kentucky Statutes, covers a policy where there is a right to change the beneficiary, and he held that it did. If there was room to do so, I should not differ from him and create discord in the administration of the law in this particular between the two districts. In accord with his decision are those arising in other jurisdictions in the cases of In re Whelpley (D. C.) 169 Fed. 1019, 22 Am. Bankr. Rep. 433; In re Johnson (D. C.) 176 Fed. 591, 24 Am. Bankr. Rep. 277; In re Orear, 189 Fed. 888, 111 C. C. A. 150, 26 Am. Bankr. Rep. 621; In re Young (D. C.) 208 Fed. 373, 31 Am. Bankr. Rep. 29; In re Fetterman (D. C.) 243 Fed. 975, 39 Am. Bankr. Rep. 834; Jens v. Davis (C. C. A.) 280 Fed. 706.

The decisions in the following cases which might otherwise be in point, are possibly not so in view of the fact that it does not appear that the insured had the right to change the beneficiary: In re Booss (D. C.) 154 Fed. 494, 18 Am. Bankr. Rep. 658; In re Carlon (D. C.) 189 Fed. 815, 27 Am. Bankr. Rep. 18; In re Morse (D. C.) 206 Fed. 350. The decisions in the following Pennsylvania cases would seem to be contra: In re Herr (D. C.) 182 Fed. 716, 25 Am. Bankr. Rep. 142; In re Jamison Bros. & Co. (D. C.) 222 Fed. 92, 34 Am. Bankr. Rep. 231; In re Shoemaker (D. C.) 225 Fed. 329, 35 Am. Bankr. Rep. 22; In re Flanigan (D. C.) 228 Fed. 339, 35 Am. Bankr. Rep. 807. And also the decision in the Maryland case, to wit, In re Jones (D. C.) 249 Fed. 487, 41 Am. Bankr. Rep. 299, 467. The decisions in the following New York cases: In re Wolff (D. C.) 165 Fed. 984, 21 Am. Bankr. Rep. 452; In re White, 174 Fed. 333, 98 C. C. A. 205, 26 L. R. A. (N. S.) 451, 23 Am. Bankr. Rep. 90; In re Hettling, 175 Fed. 65, 99 C. C. A. 87, 23 Am. Bankr. Rep. 161; In re Draper (D. C.) 211 Fed. 230, 32 Am. Bankr. Rep. 203—seem not to be contra, in view of the fact that the New York statutes limited the exemption to instances where the beneficiaries had the absolute right to the proceeds of the policy.

I am constrained, therefore, to affirm the ruling of the referee.