### In re DEUTSCHER et al.
### No. 35840.

District Court, E. D. New York.
June 10, 1940.

Duberstein & Schwartz, of Brooklyn, N. Y., for trustee.

Cohen & Wedeen, of New York City (Sidney Wedeen, of New York City, of counsel), for bankrupts.

GALSTON, District Judge.

This is an application to dismiss the petition of the bankrupts to review the order of the referee which directs the bankrupt to turn over to the trustee merchandise consisting of men's furnishings of the value of $16,391.82, or the proceeds thereof, which the order recites "are now in the possession or under the control of said bankrupts."

On October 26, 1938, an involuntary petition in bankruptcy was filed and the bankrupts adjudicated as such on November 14, 1938. The referee found that the bankrupts had been engaged in the men's furnishings business for several years prior to the institution of the bankruptcy and had maintained a number of retail stores, all of which, save one located in Brooklyn,

were discontinued before bankruptcy. The referee found, following the financial statement of the bankrupts, that on January 31, 1938, they had an inventory of merchandise of $47,899.06; that subsequent thereto the bankrupts purchased merchandise at a cost price of $41,760.06, making a total of $89,656.12.

He also found that on October 4, 1938, the bankrupts had inventories in Brooklyn amounting to $11,577.05, and at Providence an inventory of $6,383.80, or a total of $17,960.85.

The referee concluded therefore that the cost price of merchandise sold during the period was $71,698.33.

The trustee's accountant, basing his estimate on the balance sheets and statements of income profit and loss for the year ending July 31, 1936, for the year ending January 31, 1937, and the year ending January 31, 1938, concluded that the bankrupts had sold their merchandise on an average mark up of 30% over cost. The referee accordingly found that the sales of goods during the period from February 1, 1938, to October 4, 1938, should have totalled $102,426.18, whereas the bankrupts' records show sales of but $81,418.16. Hence the referee concluded that the bankrupts had failed to account for merchandise of the value of $21,008.02. The bankrupts having claimed that they suffered a flood loss in their Providence store were allowed a credit of $4,616.20, which in the referee's findings is the difference between an average inventory in that store of $11,000 and the actual inventory on October 7, 1938, of $6,383.80. Accordingly the referee holds that the bankrupts have in their possession, concealed from their creditors, merchandise of the value of $16,391.82, which should be turned over by them to the trustee.

In the foregoing summary of the findings of fact, that which particularly challenges attention is the assumed mark up of 30% of the cost of merchandise, and the assumption that the sales made were on that basis. To be successful in a turnover proceeding the trustee must establish his contention by evidence that is clear and convincing. It may be fair inference to believe that since the bankrupts, over a period of three years prior to February 1, 1938, conducted their business on a mark up of 30% over cost in the sale of their merchandise, they would have continued to do so; but in the absence of proof that

business conditions in the particular line of industry, men's furnishings, were at least as favorable during the period from February 1, 1938, to October 4, 1938, as prior thereto, the inference that the bankrupts had in fact done so would not be warranted. Hence to hold that they have in their possession or subject to their control, or did have at the time of the making of the order, merchandise of the fair value of $16,391.82, does not seem to be established by the weight and quality of evidence required by the cases. Oriel v. Russell, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419; Danish v. Sofranski, 2 Cir., 93 F. 2d 424; Matter of Goldman, 1 Cir., 62 F.2d 421; In re Redbord, 2 Cir., 3 F.2d 793; In the Matter of City Plumbing Supply Co., Inc., D.C., 26 F.Supp. 740.

The reason for the rigid rule of evidence and the applicability of the test stem from the realization that a turnover order, if not complied with, to be effective will be followed by a motion to punish for contempt. Imprisonment would be the natural and ultimate result. Thus evidence which might successfully bar discharge would not of necessity be so clear and convincing as to justify an affirmative order in a turnover proceeding.

On the merits too one perhaps might take into consideration the testimony of trustee's witness Lanctot who was told by one of the bankrupts on February 24, 1938, that the bankrupts expected to close out some stores, "and would confine themselves thereafter to two or three locations only, because they found out that operating these stores for a period of time did not always prove satisfactory, in other words, they lost money". Deutscher, one of the bankrupts, testified that business conditions in 1938, compared with 1937, were poor and that the sales in volume dropped off a great deal. The testimony as to the sales of six stores, in Hempstead; Avenue U, Brooklyn; Pawtuckett, R. I., 6816 Bay Parkway; Jerome Avenue, Bronx; and Southern Boulevard, Bronx, during 1938, does not justify the contention of the trustee's accountant that business was conducted in normal course at a 30% mark up. The accountant admitted, in cross-examination, that he had not ascertained whether any of the stores of the bankrupt had been closed during the period from February 1, 1938, to October 4, 1938.

The referee refers to missing books as making the task of the trustee more diffi-

cult in establishing his petition. Doubtless that was so, but that fact does not lessen the obligation of the trustee.

The bankrupts contend also that the referee was in error in failing to credit the bankrupts with an adequate sum for losses as a result of the flood in Providence. If such credit was inadequate the bankrupts have only themselves to blame, for here the burden of proof was on them to establish that they were entitled to a greater credit. The referee, in the absence of books or records of the bankrupt, was unwilling to accept their guesses as to the value of the merchandise on hand.

Accordingly the trustee's motion to dismiss the petition to review is denied and the referee's order reversed. Settle order on notice.