**In re Oda Joseph CARON and Lorraine Norma Caron, Debtors.**

**Oda Joseph CARON, D/B/A Caron & Sons Mobil, F/D/B/A Wakefield Country Store and Lorraine Norma Caron, Appellants,**

v.

**FARMINGTON NATIONAL BANK and Lawrence P. Sumski, Chapter 13 Trustee, Appellees.**

No. 95–2320.

United States Court of Appeals, First Circuit.

Heard April 3, 1996.

Decided April 25, 1996.

---

Grenville Clark, III with whom Gray Wendell & Clark, P.C., Manchester, NH, was on brief for appellants.

David P. Azarian with whom Michael, Jones & Wensley, Rochester, NH, was on brief for appellees.

Before SELYA, Circuit Judge, ALDRICH, Senior Circuit Judge, and STAHL, Circuit Judge.

STAHL, Circuit Judge.

Oda J. Caron and Lorraine N. Caron appeal the district court's affirmance of the bankruptcy court's denial of an exemption for the cash surrender value of an insurance

policy on Mr. Caron's life. Because we find that the courts below correctly interpreted the applicable New Hampshire statute, we affirm.

### Background

Appellants, husband and wife, filed a joint Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the District of New Hampshire. In their statement of financial affairs, they listed as an asset a Metropolitan Life Insurance Company policy on the life of Mr. Caron, and they claimed the policy's $19,260 cash value as exempt property pursuant to § 522(b)(2)(A) of the Bankruptcy Code. Because New Hampshire enacted legislation "opting out" of the federal exemptions, New Hampshire debtors are only permitted to exempt property pursuant to state-enacted exemptions, not those specified in 11 U.S.C. § 522(d). *See* N.H.Rev. Stat.Ann. § 511:2–a (opting out of federal exemption scheme). Farmington National Bank, a creditor of the Carons, timely filed an objection to the exemption claim, in which the chapter 13 trustee joined.

After a hearing before the bankruptcy court, at which a copy of the life insurance policy was placed in evidence, the court ruled that the policy was property of the estate under 11 U.S.C. § 541(a)(1) and that the cash surrender value of the life insurance policy was not exempt under New Hampshire law. The Carons appealed that ruling to the United States District Court for the District of New Hampshire, which affirmed the order of the bankruptcy court. This appeal followed.

■ The sole issue for determination is whether the courts below erred in holding that the life insurance policy was not exempt property. The parties agree with the relevant factual findings made by the bankruptcy court: that at the time of the filing of the bankruptcy petition, Mr. Caron owned the life insurance policy and retained the right to change the beneficiary (his wife and co-debtor Lorraine Caron) and the contingent beneficiaries (their children), as well as the right to surrender the policy for its cash value. Thus, for purposes of this appeal, all that is before us is the legal conclusion that the policy was not exempt, and our standard of review is *de novo. See TI Federal Credit Union v. DelBonis,* 72 F.3d 921, 928 (1st Cir.1995).

### Discussion

In order to determine whether the cash value of the policy is exempt, we begin with the New Hampshire statute, N.H.Rev.Stat. Ann. § 408:2, which provides:

> If a policy of life or endowment insurance is effected by any person on his own life or on another life, in favor of a person other than himself having an insurable interest therein, the lawful beneficiary thereof other than himself or his legal representatives, shall be entitled to its proceeds and all other benefits against creditors and representatives of the person effecting the same; provided, that, subject to the statute of limitations, the amount of any premiums for said insurance paid in fraud of creditors, with interest thereon, shall enure to their benefit from the proceeds of the policy.

The bankruptcy court ruled that the policy was not exempt, incorporating by reference its discussion of the issue in *In re Monahan,* 171 B.R. 710, 715–21 (Bankr.D.N.H.1994) where it decided three separate cases involving exemption claims under New Hampshire's life insurance exemption statute, § 408:2.

■ Because the New Hampshire Supreme Court has not rendered any decisions construing § 408:2, we interpret the statute as we think that court would interpret it. The district court agreed with the bankruptcy court that the plain meaning of the statute restricts the exemption right to the beneficiary and provides no protection for the insured/owner of the policy. Because the policy in this case provided the beneficiary with no right to the proceeds or other benefits of the policy except upon the death of the insured, the district court ruled that Mrs. Caron, the named beneficiary, had no right during the life of her husband to maintain the policy for her benefit or to surrender the policy for its cash value, and that her sole interest was as the beneficiary in the event of Mr. Caron's demise.

The appellees, Farmington National Bank and the Chapter 13 Trustee, argue that the New Hampshire statute distinguishes between the owner/insured of the policy and a third person beneficiary and clearly specifies that the person entitled to the exemption is "the lawful beneficiary thereof," not the insured/owner. The appellees argue that only when the insured has "parted with all of his beneficial interest therein" would a life insurance policy be exempt from the insured's creditors, quoting from and relying upon *In re Bray*, 8 F.Supp. 761, 763 (D.N.H.1934). They reason that since Mr. Caron, at the time of the bankruptcy filing, had not "parted with all his beneficial interest" in the policy, but rather retained ownership and the concomitant rights to reach its cash value and to change the beneficiary, he still effectively retained all the beneficial interest. Mrs. Caron's interest, they assert, was both defeasible by Mr. Caron and contingent upon his death.

■ While the statute is not a model of clarity, we find the reasoning of the bankruptcy court and the district court to be compelling. We agree that the statute cannot be read to exempt the policy in favor of an owner/insured, but only in favor of a beneficiary. And here, the rights of the beneficiary, Mrs. Caron, do not arise until Mr. Caron's death, and her prospective rights can be diminished or terminated by him during his lifetime. As such, because Mr. Caron was alive at the time the petition in bankruptcy was filed, Mrs. Caron had no rights in the proceeds, cash value, or other benefits of the policy. Thus, she had no interest in the policy that could be exempted by the statute. The rights and powers under the policy retained by the owner/insured, Mr. Caron, became the property of the estate as of the filing of the petition. *See* 11 U.S.C. § 541(a)(1) (all legal or equitable interests of the debtor in property become property of the estate upon commencement of the case). Accordingly, neither Mr. Caron nor his wife are entitled to the statutory exemption.[1]

■ While we recognize that generally courts are to construe exemption statutes liberally to reflect their remedial purposes, we find reasons here to afford a more narrow reading. While the result that the Carons seek would apparently obtain under the analogous federal exemption, 11 U.S.C. § 522(d)(7), *see In re Monahan*, 171 B.R. at 716 & n. 8, legislative history indicates that New Hampshire opted out of the federal exemption scheme because it was too "liberal," overly indulgent of debtors at the expense of creditors.[2] Even more persuasive is legislative history indicating that the New Hampshire legislature specifically chose to delete language that would have made the Carons' arguments much more plausible. The statute at issue, as originally proposed, provided that the exemption was available "whether or not the right to change the beneficiary is reserved or permitted to such person [the owner/insured]," but that language was struck. New Hampshire House Report on House Bill 224, Journal of the House, April 29, 1931, at 698. We infer from the deletion that the legislature declined to extend the exemption to policies where the owner/insured retained the power to alter the beneficiary. Of like import is the legislature's deletion of the provision that "No court and no trustee or assignee for the benefit of creditors, shall elect for the person effecting such insurance to exercise such right to change the named beneficiary." *Id.* We infer from this deletion a legislative intent that the statute should not prevent a bankruptcy trustee from stepping into the policy owner's shoes to exercise policy rights, such as reaching the cash value or changing

1. We note, but do not rely upon, the fact that Mrs. Caron is a co-debtor in this joint bankruptcy, and it appears therefore that her interest in the insurance policy was an asset of the estate in any event, subject to the claims of *her* creditors if not Mr. Caron's. At most, the exemption statute shelters a policy from the creditors of the insured; it makes no reference to the creditors of the beneficiary. *See* N.H.Rev.Stat.Ann. § 408:2.

2. *See* New Hampshire House Judiciary Comm. Report, Journal of the House, 1981 January Session, April 23, 1981, at 533 (stating that the proposed opt-out statute "prevents New Hampshire residents from filing with the more liberal federal bankruptcy law."); Minutes of House Judiciary Committee executive session April 20, 1981, statement of Representative Eaton (federal bankruptcy act is "very liberal" and that state exemptions ought to control instead).

the beneficiary. Thus, the legislative history strongly suggests a narrow scope for New Hampshire's life insurance exemption, and the Carons' exemption claim falls outside that scope.

Contrary to the Carons' arguments, we are not bound to follow, and need not overrule, the district court decisions in *In re Whelpley,* 169 F. 1019 (D.N.H.1909), and *In re Bray,* 8 F.Supp. 761 (D.N.H.1934). The *Whelpley* decision predates the enactment of the present statute and the aforementioned legislative choices to set a narrow scope for the exemption. Moreover, the two-paragraph *Whelpley* opinion is devoid of analysis. In *Bray,* the district court held that the life insurance policy was *not* exempt under the statute at issue here. *Bray,* 8 F.Supp. at 763. While *Bray* provides more analytical discussion, it is not clear which aspects of the insurance policy rendered it non-exempt. It is just as plausible, in our view, to read *Bray* as support for the appellees' arguments as it is for the Carons'. Thus, having considered both *Whelpley* and *Bray,* we find them unpersuasive.

Because the language of the exemption statute does not encompass the insurance policy in this case, the decision of the district court is *affirmed.*